LILLIE M. HOWARD, *et als.* FOR AN OPINION.

JUNE 22, 1914.

PRESENT: Johnson, C. J., Parkhurst, Sweetland, Vincent, and Baker, JJ.

*(1)  Wills.  Remainders.*

Testamentary provision to widow of testator "her heirs and assigns forever all my real estate and personal property in trust—to hold said real estate and personal property and the rents, profits and income thereof for her own use

27

during her natural life, or so long as she shall remain my widow," and "upon her decease or marriage, to hold the same in trust for the support of my minor children—until such time as the youngest of minor children who shall live to attain the age of twenty-one years shall have attained that age and then to convey said estate in equal shares to my children then living and to the descendants of any of them that may have deceased."

*Held,* that the purpose was to give the widow the use of the trust estate during her natural life except in case of her remarriage, and if necessary the trust was to continue until the majority of the youngest child of testator.

*Held,* further, that the expression "*then* to convey said estate," referred to the happening of the event which was to mark the termination of the trust and not to the attaining of the age of twenty-one years by the youngest child.

*Held,* further, that the equitable remainders after the life estate of the widow were contingent and therefore a child who deceased in the lifetime of the widow and after the youngest child had attained its majority had no devisable interest in the estate.

PETITION under Gen. Laws, 1909, cap. 289, § 20, for an opinion.

BAKER, J.  This is a petition under Section 20 of Chapter 289 of the General Laws, brought originally in this court by parties having adversary interests, wherein the petitioners ask for an opinion declaratory of the rights of the parties in interest under the last will and testament of Samuel J. Howard, late of Providence, in this state, deceased.

Said Samuel J. Howard died on or about March 27, 1884, testate.  His last will and testament was duly admitted to probate by the municipal court of said Providence on April 29, 1884.  The controversy has arisen as to the construction to be given to the third clause of said will, which is as follows: "I give, devise and bequeath to my dearly beloved wife, Jane Elizabeth Howard, her heirs and assigns forever, all my real estate and personal property of which I shall die possessed, including my real estate and personal property which I may hereafter acquire, in trust nevertheless for my said wife to take possession and charge of said real estate and to collect the rents and profits thereof and to apply to keeping said real estate in good order and repair, and to the payment of the interest on any mortgage upon the same and

also to receive and collect of the Mutual Benefit Insurance Company of New Jersey, two life insurance policies for the sums of one thousand dollars each, upon my life, and to apply the amount thereof to the payment and reduction of the principal sum due upon any mortgage upon said real estate, or to use the same for other purposes in her discretion, and to hold said real estate and personal property and the rents, profits and income thereof for her own use during her natural life or so long as she shall remain my widow, and upon her decease or marriage to hold the same in trust for the support of my minor children, and to the payment of the principal sum due on said mortgage until such time as the youngest of minor children who shall live to attain the age of twenty-one years, shall have attained that age, and then to convey said estate in equal shares to my children then living and to the descendants of any of them that may have deceased, such descendant to take *per stirpes* and not *per capita,* to have and to hold the same to them and their heirs and assigns forever."

His widow, Jane Elizabeth Howard, survived him and died April 19, 1913. Of course at the time of her death the youngest minor child of the testator to attain the age of twenty-one years had long before attained that age inasmuch as the widow survived the testator more than twenty-nine years. The testator left several children, among them a son, Samuel J. Howard, who died October 20th, 1905, testate, leaving him surviving a widow, Lillian E. Howard, and a son, Charles D. Howard, by a former marriage.

The fifth clause of the will of the younger Samuel J. Howard is as follows: "Fifth: I give, devise and bequeath to my wife Lillian E. Howard, her heirs and assigns forever all the rest, residue and remainder of my estate of every name and nature, real, personal and mixed, including all which I inherited from my father or which was devised to me by his will, as well as all which I may acquire subsequent to the date of this will and of which I shall die seized and possessed, or to which I shall be entitled at the time of my decease."

Eight persons signed the petition, including said Lillian E. Howard and said Charles D. Howard and the petitioners say that they are all of full age and that they are now the only persons interested in the proper construction of said will of Samuel J. Howard, Sr., and in the property given and devised thereby. The interests of said Lillian E. Howard and Charles D. Howard are represented as adverse and they are the only ones who have appeared by counsel and submitted briefs.

(1) While the will of Samuel J. Howard, Sr., is somewhat inartificial in construction and also somewhat careless in the matter of verbal expression, the general scheme of the testator in the disposition of his property is plain. After directing payment of his just debts and funeral expenses and bequeathing to his wife absolutely his household furniture and all goods and supplies on hand at the time of his death, he gives, devises and bequeaths to her "her heirs and assigns forever all my real estate and personal property" . . . "to hold said real estate and personal property and the rents, profits and income thereof for her own use during her natural life or so long as she shall remain my widow." Apparently his dominant purpose is to give her the sole use and benefit of the entire trust estate during her natural life unless by her own act she deprives herself thereof by remarrying. The trust therefore must, at least, continue and the trust estate remain undivided until her death or remarriage. But the testator apparently saw the possibility of the happening of one of these events before the youngest of his minor children became twenty-one years of age and, desiring to perpetuate the trust in such case until all of his children should be of age, he further provides (referring to his wife) that "upon her decease or remarriage to hold the same in trust for the support of my minor children and to the payment of the principal sum on said mortgage until such time as the youngest of minor children who shall live to attain the age of twenty-one years shall have attained that age and then to convey said estate in equal shares to my children then

living and to the descendants of any of them that may have deceased." Grammatically this language provides that the testator's wife is still to hold the property in trust after marriage or death. That, of course, would be impossible after death and what was his real intention upon the happening of either of the events named is shown by the provision at the end of paragraph three of his will where he authorizes the "Court of Probate of the City of Providence upon the decease or marriage of my said wife to appoint a new trustee under this will which new trustee when so appointed shall have and exercise all the powers and be subject to all the duties and liabilities of the original trustee herein named." But the words, "upon her decease or marriage to hold the same in trust," in this connection do imply that if necessary the trust was to continue until the youngest of the testator's children who should attain the age of twenty-one years should reach that age. It is clear that the intention was that the trust should continue until the testator's widow should remarry or die and until the youngest of his minor children should become twenty-one years old. Whichever one of these three events should happen last, thereupon the trust was to terminate and the time for dividing and distributing the trust estate would arrive.

It is urged in behalf of Lillian E. Howard that the word *then* in the expression "then to convey said estate" refers to the time when the youngest of said minor children "who shall live to attain the age of twenty-one years shall have attained that age." Grammatically this is undoubtedly correct, but it is to be borne in mind that the testator was providing for the contingency of his wife's dying or remarrying while some of his children were minors, and fixed the date of the reaching the age of twenty-one years by his youngest child attaining that age for the division of the trust estate only in the happening of said contingency, which, however, did not happen. The will does not expressly provide for the distribution of the trust estate at the death of the widow in case at that time all of their minor children

shall have attained the age of twenty-one years, but, however, the object in creating the trust would then be fully accomplished, aside from the division of the estate, inasmuch as the widow had received "the rents, profits and income thereof for her own use during her natural life" and inasmuch as the continuance of the trust "for the support of my (his) minor children" would not be necessary, since such children had ceased to be minors.

In the brief for Lillian E. Howard it is stated that the youngest child of Samuel J. Howard, Sr., had attained the age of twenty-one years before July 15, 1905, when Samuel J. Howard, Jr., made his will. To hold that on that date the time had arrived for the trustee "then to convey said estate in equal shares to my children then living," would have deprived the testator's widow of the use of his estate for the last eight years of her life notwithstanding the gift to her for life. It is obvious that the intention of the testator as expressed in his will can only be carried out by interpreting the words "then to convey" as referring to the happening of the event which was to mark the termination of the trust. Had the widow died or remarried during the minority of the children then the arrival of the youngest child of the testator at the age of twenty-one years would have been such event, but as the testator's widow did not remarry and as all of his children attained their majority while she was alive, then the happening of her death on April 19, 1913, was the event which terminated the trust and fixed the time for the conveyance and distribution of the trust estate.

The question remains as to whether said Samuel J. Howard, Jr., took a devisable interest in an equal share of the trust estate under his father's will which would pass under his own will to his widow, Lillian E. Howard, or his son, Charles D. Howard, took said share under his grandfather's will as his father's only descendant.

The legal estate in fee was in the testator's widow. She also had an equitable estate for life or widowhood. Were

the equitable remainders over vested or contingent? In *Melcher, Petitioner*, 24 R. I. 575, 578, this court said: "Cases upon the construction of wills and upon vested and contingent remainders have been too numerous and conflicting for an attempt to review or to reconcile them. Indeed, the task would be well-nigh impossible." Perhaps in the present case the question is not of paramount importance as the practical result would be the same, if the interest of Samuel J. Howard, Jr., under his father's will was contingent upon his surviving his mother or, if vested, it was subject to be divested by his death during his mother's lifetime. It is true that the law favors the vesting of estates, but upon this point, as all others, the intention of the testator if ascertained must prevail.

We are of the opinion that these equitable remainders were contingent. There are several Rhode Island cases supporting this view.

In *Brown* v. *Williams*, 5 R. I. 309, the testator devised lands to trustees for the use of his daughter, Mary Dockray, for life with a remainder in fee to her lawful issue, and in case she died leaving no such issue "to the children of my daughter, Ann Brown, not only those that are now born, but those that may be born, to be equally divided between them, share and share alike, or to the issue of deceased children, as shall be living at the time of my said daughter, Mary Dockray's decease, the children of a deceased child to take the same share their parent, if living, would have taken." It was held that the children of Ann Brown, who survived Mary Dockray, were alone entitled to participate in the contingent remainder in said lands and hence that nothing passed in the lands under the will of one of them who died during the life of Mary Dockray, though she subsequently died without issue. On page 316, Ames, C. J., says: "If the *contingency* is to decide who is to be the object of the contingent limitation, as the person, or of the persons, to or amongst whom the contingent or future interest is directed, as it cannot be determined in whom the interest is,

until the contingency happens, no one can claim, before the contingency decides the matter, that any interest is vested in him to descend from, and hence to be transferred or devised by him;" and also on the next page (as follows): "If, therefore, we construe the words 'as shall be living at the time of my said daughter, Mary Dockray's decease, as grammatically applicable only to the issue of deceased children, how, we may ask, are *their* interests under this will to be preserved, since, then, we must hold, that an interest in these shares so vested in the children, that they might, pending the life estate of Mary Dockray, alienate them from their issue? The issue of children, living at the determination of the life estate, were certainly to take the share which their parents, if living, would have taken, as purchasers; and such an interest in them seems to us utterly incompatible with a right on the part of the parent to alienate his share, which would follow the vesting of any interest in the children pending the life estate of Mary. The issue were to take the shares which their parents 'if living, *would have taken;*' which strongly implies, that their parents were to take nothing, unless living at the death of Mary Dockray."

In *Bailey* v. *Hoppin*, 12 R. I. 560, there was a conveyance in trust with certain powers and upon certain trusts and in further trust on the decease of the grantor and his wife to convey the trust estate to such of the children of the grantor and his wife "who shall be living at the decease of the survivor of them, and to such issue, then living, of any one or more of the children of the grantor and said wife, who may then be deceased, their respective heirs and assigns, in equal shares, as and when said children, and issue shall respectively attain the age of twenty-one years, or die under that age, in a course of distribution, so that the issue of any deceased child may take, by way of substitution, the share only which the parent would have taken if living." The grantor had six children when the trust deed was executed. They all survived their parents and were all over twenty-one when the surviving parent died, which was the mother. During her

lifetime a son, Arnold Burges, gave a quitclaim deed of all his right, title and interest in the trust estate. Durfee, C. J., on page 567, says: "The first question which we will consider is, were the equitable remainders created by the trust deed vested or contingent? We think they were clearly contingent. · They were limited, after the death of the grantor and his wife, not to their six children, but only to such of them as should then be living, and to the issue of such of them as should then be dead. It was uncertain at the creation of the trust, and it continued to be uncertain during the life of the surviving parent, who, if any, of the children would survive. Arnold Burges might or might not survive; but unless he did survive he would not be one of the persons to whom the equitable estate in remainder was limited. It was uncertain not only *when* he would be entitled to the sixth of the estate in *possession*, but *whether* he would ever be entitled to it, either in possession or *right*. We think, therefore, that the equitable remainders were contingent, and continued so until the death of Mrs. Burges, the equitable donees in remainder being then first ascertained."

In *Melcher, Petitioner, supra,* there was a testamentary devise to a wife for life and then "upon the decease of my said wife, the property by this and the preceding clause devised shall belong to my children, the descendants of any deceased child to take the share their parent would have taken if living." Testator died leaving a widow and three children. One of these children, Henry L. Stevens, died without issue before the termination of his mother's life estate, leaving a will disposing of his property. Stiness, C. J., on page 577, says: "The first inquiry, therefore, is the legal effect of the terms of the will. This involves three things: the time of taking, the persons to receive, and the quantity of the estate devised.

"Upon these points we think that the will is explicit. The time when the interests of the children or their descendants were to attach was 'upon the decease of my said wife.' That is the focal point. That was the time when the interests were to be determined.

"The persons who were then to receive the property were the living children or their descendants, *per stirpes*. The persons, therefore, who were to take were uncertain. It could not be known which, if any, of them would be alive to take an interest in the estate. If one or more of the children did not live, the estate was not to go to their heirs, as heirs, nor to their assigns, but to certain described persons. For example, had Henry L. Stevens left children, a third interest would have gone to them, not as heirs of their father, but as devisees under the will." See, also, *Ross* v. *Nettleton*, 24 R. I. 124; *Rhode Island Hospital Trust Co.* v. *Harris*, 20 R. I. 408; *Matter of Baer*, 147 N. Y. 348; *Dickerson* v. *Sheeley*, 141 N. Y. Supp. 35; *Olney* v. *Hull*, 21 Pick. (Mass.) 311; *Thomson* v. *Ludington*, 104 Mass. 194.

We think that the cases quoted are decisive of the case at bar, and that the children of the testator were to take no part of the corpus of the trust estate, unless living when the trust terminated, which was upon the death of their mother.

We are of the opinion, therefore: (1) that by reason of the death of Samuel J. Howard, Jr., before his mother, he had at the time of his death, no devisable interest in the estate of his father and that in consequence his widow, Lillian E. Howard took no part of said estate under her husband's will; (2) that Charles D. Howard took under his grandfather's will as the sole descendant of his father the equal share of said estate which his father would have taken had he survived his mother.

A declaratory decree in accordance with this opinion may be presented for approval on June 29, 1914, at 10 o'clock A. M.

*Mitchell & Edwards*, for Charles D. Howard.

*John B. Edwards*, of counsel.

*Henry Marsh, Jr.*, for Lillian E. Howard.